**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KCL RESOLUTIONS, LLC,<br>    Plaintiff,<br><br>            v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.),<br>    Defendant. | Civil Action No.<br>1:23-cv-02997-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendant Wells Fargo Bank National Association Inc.'s Motion to Compel Arbitration and Stay Proceedings [ECF 5]. For the following reasons, Wells Fargo's motion is **GRANTED**.

**I.    BACKGROUND**

This case concerns a bank account that KCL Resolutions, LLC opened with Wells Fargo.[1] As a condition of opening the account, KCL executed an application,[2] pursuant to which KCL expressly acknowledged and agreed to be bound by an Arbitration Agreement for "any dispute between [KCL] and [Wells Fargo] relating to [KCL's] use of any [Wells Fargo] deposit account, product or service."[3]

---

[1]   ECF 5-1, ¶ 5.

[2]   *Id.* ¶ 6.

[3]   *Id.* at 8.

1

The Arbitration Agreement, which was attached to the account application, further states that a "dispute" includes "any unresolved disagreement between Wells Fargo and [KCL]," and that Wells Fargo and KCL agree to "submit to binding arbitration all claims, disputes, and controversies . . . whether in tort, contract or otherwise arising out of or relating in any way to [KCL's] account(s) and/or service(s)."[4]

Following a dispute between the parties involving an allegedly counterfeit check, KCL sued Wells Fargo in the State Court of Fulton County, Georgia,[5] asserting two claims in tort.[6] The first—negligence—alleges that Wells Fargo breached a duty to inform KCL about the status of certain deposited funds.[7] The second—negligent misrepresentation—alleges that Wells Fargo misinformed KCL about the timeline of the hold on its funds.[8]

---

[4]   *Id*. at 45.
[5]   ECF 1.
[6]   ECF 2.
[7]   *Id*. ¶¶ 13–14.
[8]   *Id*. ¶ 18.

2

Wells Fargo removed the case[9] and quickly moved to compel arbitration.[10] Wells Fargo's motion is uncontested by KCL.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA" or "Act") generally governs the validity and enforceability of agreements to arbitrate. Section 2 of the FAA is the "primary substantive provision" of the Act. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 2 provides, in relevant part:

> A **written** provision in . . . a contract **evidencing a transaction involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be **valid, irrevocable, and enforceable**, save upon **such grounds as exist at law or in equity for the revocation of any contract**.

9 U.S.C. § 2 (emphasis added).

---

[9] Here, there is diversity jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. First, KCL is a limited liability company. A limited liability company is a citizen of any state of which a member of the company is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). KCL's sole member—Kasey Libby—is a citizen of Georgia. ECF 3, ¶ 4. As such, KCL is a citizen of Georgia. Second, Wells Fargo is a national banking association. For diversity purposes, it is a citizen of the state where it is "located," 28 U.S.C. § 1348, *i.e.*, where its main office is located. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). Wells Fargo's main office is in South Dakota. ECF 1, at 4–5; ECF 4, ¶ 4. As such, Wells Fargo is a citizen of South Dakota. Finally, the amount in controversy here is $88,000. ECF 2, ¶ 16.

[10] ECF 5.

Section 2 places arbitration agreements on an "equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). Arbitration agreements "will be upheld as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense,'" and courts must enforce such agreements "save upon such grounds as exist at law or in equity for the revocation of any contract." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015).

Still, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute.*" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (citations omitted). Importantly, however, there is a presumption of arbitrability where a "validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Id.* at 301. And, an order to arbitrate a "particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). In other words, as a matter of federal law, "any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24–25.[11]

Under Section 2 of the FAA, then, an arbitration agreement is valid, irrevocable, and enforceable when that agreement is in writing and evidences a transaction that involves commerce. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368–70 (11th Cir. 2005). Before ordering parties to arbitrate, a court must generally also confirm that the agreement covers the dispute at hand. *Granite Rock Co.*, 561 U.S. at 314.

## III. DISCUSSION

Here, the Arbitration Agreement between KCL and Wells Fargo is valid and enforceable because all three prerequisites are met: (1) a written agreement to arbitrate claims; (2) a transaction involving commerce; and (3) coverage of the controversy by the arbitration clause.

### A. The Arbitration Agreement Is in Writing.

Because the Arbitration Agreement between the parties is in writing, this element is satisfied.[12]

---

[11] This presumption reflects the "federal policy favoring arbitration," which was enacted to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Granite Rock Co.*, 561 U.S. at 302.

[12] ECF 5-1, at 5–8, 45–46.

### B.     The Arbitration Agreement Evidences a Transaction Involving Commerce.

Section 2 of the FAA requires arbitration unless the agreement to arbitrate is not part of a contract evidencing a transaction "involving commerce." *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The statute itself defines the term "commerce" to mean, in relevant part, "commerce **among the several States** or with foreign nations." 9 U.S.C. § 1 (emphasis added).

Further, the Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). A transaction may affect commerce "if in the aggregate the economic activity in question would represent a general practice … subject to federal control." *Id*. at 56–57.

Banking and related financial activities are a class of activities within the reach of federal control. *See Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 38 (1980) ("While banking and related financial activities are of profound local concern, it does not follow that these same activities lack important interstate attributes that establish Congress' power to regulate commerce.").

Here, the economic activity in question includes the deposit of funds by KCL, a company headquartered in Georgia; a hold placed on the funds by Wells

6

Fargo, a company headquartered in South Dakota; a subsequent transfer of those funds by KCL; and removal of the funds from the bank account by Wells Fargo.[13] In other words, the economic activity in question revolves around banking activities between the States of Georgia and South Dakota. This, coupled with the presumption discussed above that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," is sufficient for this Court to find that the deposit, transfer, and subsequent deduction of the funds from KCL's bank account is an arbitrable issue that involves interstate commerce.

### C. The Claims Before the Court Fall Within the Scope of the Arbitration Agreement.

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). When determining whether a dispute is subject to an arbitration agreement, "[a]bsent some ambiguity in the agreement … it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Courts must then "compare the language of the arbitration provision with the factual allegations and claims set forth in the complaint" to determine if those claims are within the scope of the

---

[13] ECF 5, at 7.

arbitration agreement. *Slaughter v. Amsher Collection Serv.*, No. 1:16-CV-1768-ELR-WEJ, 2016 U.S. Dist. LEXIS 196178, at *13 (N.D. Ga. Oct. 11, 2016).

Here, there is no ambiguity in the Arbitration Agreement's language, which states that it applies to "any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service,"[14] and explicitly provides that all disputes between Wells Fargo and its customers, including those sounding "in tort," will be submitted to binding arbitration.[15] In addition, the unresolved dispute between Wells Fargo and its customer—KCL—revolves around certain funds deposited into KCL's bank deposit account,[16] and KCL has brought two claims sounding in tort.[17] These claims are expressly encompassed by the clear language in the Arbitration Agreement. As such, this Court finds that the present dispute falls squarely within the scope of the Arbitration Agreement.

Alternatively, while the parties did not address this issue, the Arbitration Agreement could be interpreted to delegate the threshold issue of arbitrability itself. The FAA "allows parties to agree by contract that an arbitrator, rather than

---

[14]  ECF 5-1, at 8.

[15]  *Id.* at 45.

[16]  ECF 5, at 7.

[17]  ECF 2, at 4.

a court, will resolve threshold arbitrability questions." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ---, 139 S. Ct. 524, 527 (2019). The question regarding who has the power to decide arbitrability—the arbitrator or the court—"turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Further, the Supreme Court has held that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 139 S. Ct. at 530.

In other words, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[18] *AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986). But, when "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 139 S. Ct. at 528. In order to determine whether the parties have manifested a "clear and unmistakable" intent to arbitrate the

---

[18] This is in contrast to the presumption in favor of arbitration when determining whether the substance of a particular dispute must be arbitrated. "In this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption." *First Options*, 514 U.S. at 944–45 (citations omitted).

9

threshold issue of arbitrability, the Court must "look to the wording of the delegation provision itself." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017).

Here, the Arbitration Agreement states that it applies to "any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service."[19] The agreement defines a "dispute" as "any unresolved disagreement between Wells Fargo and [KCL]," which "may also include a disagreement about [the] Arbitration Agreement's **meaning, application, or enforcement**."[20] This language may be sufficient to satisfy the requisite "clear and unmistakable" intent of the parties to delegate the arbitrability issue. *See Jones*, 866 F.3d at 1267 (finding the requisite "clear and unmistakable" intent when the delegation provision at issue committed to arbitration any dispute "relating to the interpretation, **applicability, enforceability** or formation" of the agreement) (emphasis added). *See also Parnell*, 804 F.3d at 1148 (holding that the plain language in the agreement—that "any issue concerning the validity, **enforceability**, or scope" of the agreement—conveys the parties' "clear and unmistakable" intent to submit to an arbitrator the threshold issue of arbitrability)

---

[19]   ECF 5-1, at 8.

[20]   *Id.* at 45 (emphasis added).

(emphasis added). In either case, whether the issue of arbitrability is itself subject to arbitration, the result is the same: This dispute is headed to arbitration.

### D. Staying the Proceedings Is Appropriate in this Case.

The FAA prescribes that federal courts stay actions when the matter is referred to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . .

9 U.S.C. § 3.

Notwithstanding the plain language of the FAA, there is a split of authority as to whether courts should dismiss or stay a case where claims are subject to arbitration. *See Valiente v. Holiday CVS, LLC*, No. 20-CV-20382, 2020 WL 2404701, at *1 (S.D. Fla. May 12, 2020) (collecting cases and discussing the split within district courts). Even the Eleventh Circuit has upheld both dismissals and stays pending arbitration. *Compare Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (vacating a district court's dismissal of claims subject to arbitration and remanding with instructions to stay) *with Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x 863, 866 (11th Cir. 2006) (affirming a district court order compelling arbitration and dismissing the underlying claims).

The language of § 3 is, however, clear and mandatory: When a party makes an application for the federal action to be stayed pending arbitration, the FAA requires the Court to enter a stay. Here, Wells Fargo has made such an application. Until the Supreme Court or Eleventh Circuit resolves this precise issue,[21] the Court concludes that the proper course based on the statute's language is to stay this case. *See Russell v. Five Star Quality Care, LLC*, No. 1:22-CV-03452-JPB, 2023 WL 3646060, at *2 (N.D. Ga. May 25, 2023) ("[T]he Court is more comfortable staying this action given the plain language of the FAA . . . . Here, Plaintiff has requested a stay, and the Court has determined that the claims are referable to arbitration.").

## IV.   CONCLUSION

Wells Fargo's Motion to Compel Arbitration and Stay Proceedings [ECF 5] is **GRANTED**. The parties are **ORDERED** to arbitrate in accordance with their agreement. The parties are further **ORDERED** to file with this Court every 180 days a joint status report concerning the status of the arbitration proceeding. The parties must notify the Court, within seven days, if their dispute resolves through arbitration, settlement, or otherwise.

---

[21] The Supreme Court granted certiorari in *Smith v. Spizzirri*, Case No. 22-1218 (S. Ct. Jan. 12, 2024), to address the question: "Whether Section 3 of the FAA requires district courts to stay a lawsuit pending arbitration, or whether district courts have discretion to dismiss when all claims are subject to arbitration."

The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case. This closure is not a dismissal and does not preclude the filing of documents. The case may be re-opened if necessary. If the parties fail to file a joint status report at least every 180 days as instructed, however, the case will be dismissed with prejudice at that time.

**SO ORDERED** this 31st day of March, 2024.

Steven D. Grimberg
United States District Judge